UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC BROWN

        Plaintiff,

v.

TUFAIL AHMED

        Defendant.

_____/

Case No. 23-10415

F. Kay Behm
United States District Judge

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT IN PART (ECF No. 26)**

## I.    PROCEDURAL HISTORY

Plaintiff, Eric Brown, filed this action against Defendant Tufail Ahmed, a police officer with the City of Warren, Michigan, alleging excessive force under the Fourth Amendment and assault and battery under Michigan state law. (ECF No. 1). Ahmed filed a motion for summary judgment (ECF No. 26), which is fully briefed (ECF Nos. 27, 30, 32). The court held a hearing on Ahmed's motion on June 26, 2024 via videoconference. (ECF No. 33).

For the reasons set forth below, the court **DENIES** Defendant's motion for summary judgment in part and **GRANTS** it in part.

1

## II.   FACTUAL BACKGROUND

At approximately 9:30 AM, on Wednesday, December 29, 2021, Warren

Police Officers Ahmed and Gibson were on patrol near Southbound Mac Arthur

Blvd. and East 8 Mile Road.  (ECF No. 26-2, Police Report, p. 8).  Officer Ahmed

observed a Green 1998 GMC Sierra with Michigan license plate EGJ7935 ahead of

him.  *Id*.  The license plate on the GMC Sierra did not return a result on LEIN (the

Law Enforcement Information Network).  *Id*.  Officer Ahmed positioned his police

car behind the GMC Sierra as it drove westbound on 8 Mile Road into the U-turn

to drive east bound on 8 Mile Road.  *Id*.  The person driving the GMC Sierra (later

identified as Brown) disregarded a red light at the U-turn and proceeded

eastbound on 8 Mile Road.  *Id*.  Brown testified that he did not come to a

complete stop.  (ECF No. 26-3, Plaintiff Deposition Transcript, p. 26:23-24).

Ahmed initiated a traffic stop of Brown.  (ECF No. 26-4, Squad Car Footage,

0:31).  Ahmed identified the car being unregistered and running the red light as

the reasons he pulled Brown over.  (ECF No. 26-5, Ahmed Body Worn Camera,

0:48 – 0:50).  Brown doubted Ahmed and said, "What red light?"  *Id*. at 0:51.

Brown later acknowledged in his testimony that he was pulled over because he

ran the red light and because he had improper tags.  (ECF No. 26-3, p. 28:9-13).

During the stop, Ahmed asked Brown for his driver's license, registration, and

2

insurance, twice.  (ECF No. 26-5, 0:52 and 1:02).  Brown testified that he did not

have a driver's license and has never had one.  (ECF No. 26-3, p. 18:18-21).  During

the stop, Plaintiff stated that he did not have his license.  (ECF No. 26-5, 1:02 –

1:04).  Brown opened his center console and reached into the compartment.  *Id*.

at 1:04.

Ahmed then asked Brown to turn off his vehicle and hand over his keys.  *Id*.

at 1:05.  Officer Gibson also instructed Brown to give the keys to Officer Ahmed.

*Id*. at 1:08 -1:09.  According to Ahmed, Brown turned off his vehicle, held up his

keys, offered to hand them over to Officer Ahmed, then pulled the keys back and

away from Officer Ahmed's hand as Officer Ahmed reached for them.  *Id*. at 1:10-

1:11.  Over the course of their interaction, Officer Ahmed asked Brown to unlock

his door five times.  *Id*. at 1:14-1:32.  Ahmed also asked Brown to open the door

three times.  *Id*. at 1:23-1:32.  Ahmed opens the door, *id*. at 2:06, and

characterizes their next interaction as his attempt to escort Brown out of the

vehicle by reaching for his left wrist and arm.  *Id*. at 2:10.  Ahmed says that Brown

immediately pulled his arm back and away from him.  (ECF No. 26-5, 1:36).  Brown

then stepped out of his vehicle.  (ECF No. 26-3, p. 36; 8-9; ECF No. 26-4, 2:12; ECF

No. 26-5, 1:39).  Ahmed describes the next part of their interaction as follows:

Officer Ahmed attempted to turn Plaintiff's body to face away from his by moving Plaintiff's left shoulder forward.  Exhibit 3, 2:16; Exhibit 4, 1:40.  Plaintiff then swung his body back around to face Officer Ahmed.  Exhibit 4, 1:41.  Plaintiff then grabbed and pushed Officer Ahmed's left arm and chest area.  Exhibit 2, p. 56, line 6; p. 108, lines 8-9, 25; Exhibit 3, 2:14. Officer Ahmed is pushed backwards. Exhibit 3, 2:16.  As a result, Officer Ahmed lost his footing and repositioned his feet to address Plaintiff's pushing.  *Id*. at 2:17.  Plaintiff begins grappling with Officer Ahmed.  *Id*.; Exhibit 4, 1:39.  Plaintiff then balled up his right fist.  *Id*. at 1:40. Officer Ahmed struck, and attempted to strike, Plaintiff to control him.  Exhibit 3, 2:18 – 2:30. Officer Ahmed's body cam is knocked off his person.  Exhibit 4, 1:48.  Officer Ahmed and Officer Gibson attempt to control Plaintiff unsuccessfully.  Exhibit 3, 2:17.  Additional Officers arrive to assist Officers Ahmed and Gibson.  *Id*. at 2:31.  Officer Rucinski commands Plaintiff to "Get down, get on the ground." Exhibit 5 – Rucinski Body Worn Camera, 0:29-0:31.  Several Officers take Plaintiff to the ground.  Exhibit 3, 2:34.  As other Officers struggle to get Plaintiff's hands behind his back, Officer Ahmed steps back from the group. Exhibit 5, 0:34-1:01; Exhibit 3, 3:03 - 3:20.  Additional Officers secure Plaintiff in handcuffs. Exhibit 5, 0:34-1:01.  Plaintiff is handcuffed and placed into the back of a police vehicle.  *Id*. at 3:00 – 3:03.

(ECF No. 26, PageID.126-127, ¶¶ 26-41).

Brown tells a different version of events.  Ahmed asked Brown for his license, registration, and proof of insurance, (Ahmed Bodycam, at 00:51-00:53),[1] then immediately commanded Brown to instead roll his passenger-side window down for his partner, Officer Gibson.  *Id*. at 00:54-00:56.  Within one second, Brown complied and immediately rolled his passenger-side window down.  *Id*. Ahmed then renewed his prior request for Brown to provide his license, registration, and proof of insurance; Brown told Ahmed that he does not have his license, but has his ID, then reached to retrieve his ID from his middle console; all within four seconds of Ahmed's command.  *Id*. at 00:58- 01:04.  Brown says Ahmed's command for identification was overruled by Gibson's command that Brown first turn his vehicle off.  (Gibson Bodycam, 01:06-01:09).  Ahmed simultaneously commanded Brown to instead turn his vehicle off and, within two seconds, Brown complied and turned his vehicle off.  (Ahmed Bodycam, 01:05-01:07).  Gibson then commanded Brown to take his keys out of the ignition and hand them to Ahmed.  (Gibson Bodycam, 01:07-01:10).  Brown handed his keys to Ahmed and tells him, "I'm cooperating with you."  (Ahmed Bodycam, 01:07-

---

[1] The parties have both submitted the various video evidence of the encounter with different exhibit references.  For ease of reference, the court will refer to Brown's submissions by the name of the video segment.

01:10).  Brown gave his keys to Ahmed before Ahmed could finish stating his command to do so.  *Id*. at 01:10-01:12.

Brown then continued to sit in his vehicle, hands and palms exposed.  *Id*. at 01:09-01:15.  Ahmed then commanded Brown to "unlock the car" twice in less than two seconds.  *Id*. at 01:21-01:23.  Brown complied, unlocked the door, and told Ahmed that the vehicle is unlocked, all in under two seconds of the commands.  *Id*.  Ahmed then commanded Brown to "open the door."  *Id*. at 01:24. Less than one second later, Brown tells Ahmed that he is going to open the door, then asked Ahmed if he can get his identification for him.  *Id*. at 01:26.  Ahmed withdrew his command for identification, stating, "No. No. No.  Don't even move. Do nothing right now.  Unlock the car."  *Id*. at 01:26-01:31.  Less than one second later, having already complied with Ahmed's first command to unlock the door, Brown tells Ahmed that he is going to open his car door.  *Id*.  Ahmed then commanded Brown to "do it;" Brown verbally confirmed that he was going to open the door, and opened the door.  *Id*. at 01:30-01:35.  Once Brown opened his door, Ahmed did not verbalize any further commands.  *Id*. at 01:32-04:38.

According to Brown, without stating a word, Ahmed then grabbed Brown's left wrist and twisted it, while Brown was still sitting in his vehicle.  *Id*. at 01:32-

01:36.  Brown says that he pulled his injured left wrist back toward his chest in a

natural, unconscious reaction to the pain he felt when Ahmed twisted it, without

provocation.  (Ahmed Bodycam, 01:36).  Brown told Ahmed not to touch him and

for Ahmed to get out of Brown's car.  *Id*. at 01:35-01:38.  Brown says that Ahmed

proceeded to drag him from his vehicle by his jacket.  *Id*. at 01:38.  Brown told

Ahmed not to grab his arm because his wrist was injured.  *Id*. at 01:38-01:41;

Ahmed Dashcam, 02:09.  Brown says that Ahmed then slammed Brown into his

car door (*Id*. at 01:39-01:41), bashed Brown's injured wrist against the truck

(Ahmed Dashcam, 02:14-02:15), and continued to physically assault Brown while

Brown stated, "I'm not resisting, Sir. Sir, stop. Sir, stop," "I'm not resisting," "my

wrist f*****up," "my wrist f***** up," and "I'm not resisting man."  (Ahmed

Bodycam, 01:42-02:25).  Ahmed punched Brown in his face, grabbed Brown by his

neck, hit the back of Brown's head against his truck, and used his knee to push

Brown back into his vehicle.  (Ahmed Dashcam, 02:17-02:19; Gibson Bodycam,

01:40-01:49).  Ahmed then made three upper-cut punches to Brown's chest,

head, and face (Ahmed Dashcam, 02:20-02:22) and used his knee to repeatedly

strike Brown's face, mouth, and chest.  *Id*. at 02:23.

Brown was arrested for Resisting/Obstructing, Driving with a

Suspended/Revoked License (2nd Offense), Other Misdemeanor Traffic Offenses,

and for outstanding warrants.  (ECF No. 26-2, p. 3).  Per policy, Ahmed reported

minor bleeding from Brown's mouth and his use of strikes.  (ECF No. 26-7, Blue

Team Report, p. 2).

## III.    DISCUSSION

### A.    Standard of Review

When a party files a motion for summary judgment, it must be granted "if

the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A party

asserting that a fact cannot be or is genuinely disputed must support the

assertion by: (A) citing to particular parts of materials in the record...; or (B)

showing that the materials cited do not establish the absence or presence of a

genuine dispute, or that an adverse party cannot produce admissible evidence to

support the fact."  Fed. R. Civ. P. 56(c)(1).  The standard for determining whether

summary judgment is appropriate is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that

one party must prevail as a matter of law."  *State Farm Fire & Cas. Co. v.

McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby*,

*Inc.*, 477 U.S. 242, 251-52 (1986)).  Furthermore, the evidence and all reasonable

inferences must be construed in the light most favorable to the non-moving party.

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

However, when the record contains "a videotape capturing the events in

question," the court may not adopt a "version of the facts for purposes of ruling

on a motion for summary judgment" that "blatantly contradict[s]" the asserted

version of events such that "no reasonable jury could believe it." *Raimey v. City of*

*Niles, Ohio*, 77 F.4th 441, 447 (6th Cir. 2023) (quoting *Scott v. Harris*, 550 U.S. 372,

380 (2007)).  And the court must "nonetheless 'view any relevant gaps or

uncertainties left by the videos in the light most favorable to the Plaintiff.'"

*LaPlante v. City of Battle Creek*, 30 F.4th 572, 578 (6th Cir. 2022) (quoting *Latits v.*

*Phillips*, 878 F.3d 541, 544 (6th Cir. 2017)).

Where the movant establishes the lack of a genuine issue of material fact,

the burden of demonstrating the existence of such an issue shifts to the non-

moving party to come forward with "specific facts showing that there is a genuine

issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  That is, the

party opposing a motion for summary judgment must make an affirmative

showing with proper evidence and must "designate specific facts in affidavits,

depositions, or other factual material showing 'evidence on which the jury could

reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F.Supp.2d 905, 910 (6th Cir.

2004).  To fulfill this burden, the non-moving party need only demonstrate the

minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

In the use-of-force context, "once the relevant set of facts is determined and all reasonable inferences are drawn in favor of the plaintiffs, to the extent supported by the record, the question of whether the [officers'] actions were objectively unreasonable is 'a pure question of law.'" *Chappell v. City of Cleveland*, 585 F.3d 901, 909 (6th Cir. 2009) (quoting *Scott v. Harris*, 550 U.S. at 381 n.8; and citing *Dunn v. Matatall*, 549 F.3d 348, 353 (6th Cir. 2008)). But "*if* there is some evidence – more than a mere scintilla of evidence – that [the plaintiff], through his conduct, judged from the perspective of reasonable officers on the scene, did not give the officers probable cause to believe that he posed a serious threat of harm, a genuine fact dispute is created." *Chappell*, 585 F.3d at 909 (emphasis in original).

B.    Fourth Amendment Excessive Force

1.    *Legal standards*

Qualified immunity protects government officials from liability for civil

damages "insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982).  Courts undertake a two-pronged inquiry to

determine an officer's entitlement to qualified immunity in the excessive force

context, examining both: "(1) whether the officer violated the plaintiff's

constitutional rights under the Fourth Amendment; and (2) whether that

constitutional right was clearly established at the time of the incident." *Estate of*

*Hill ex rel. Hill v. Miracle*, 853 F.3d 306, 312 (6th Cir. 2017) (citation omitted).  The

two prongs can be addressed in any order.  *Pearson v. Callahan*, 555 U.S. 223, 236

(2009).  Qualified immunity shields an officer's actions if either inquiry is

answered in the negative.  *Martin v. City of Broadview Heights*, 712 F.3d 951, 957

(6th Cir. 2013).

Although Brown bears the burden of demonstrating that Ahmed is not

entitled to qualified immunity, the court views all facts in the light most favorable

to Brown.  *Foster v. Patrick*, 806 F.3d 883, 886 (6th Cir. 2015) (citation omitted).  If

there is video evidence, the court takes the facts "in the light depicted by the

videotape." *Leftwich*, at *2 (quoting *Scott v. Harris*, 550 U.S. 372, 381 (2007)).

However, if the video evidence "can be interpreted in multiple ways or if [the]

videos do not show all relevant facts, such facts should be viewed in the light

most favorable to the non-moving party." *Id*. (quoting *Latits v. Phillips*, 878 F.3d

541, 547 (6th Cir. 2017)).

The Fourth Amendment guarantees citizens the right to be free from

unreasonable seizures, and a court must look to the totality of the circumstances

to determine whether an officer used excessive force. *Graham v. Connor*, 490

U.S. 386, 396 (1989). "To determine if an officer's use of force violates the Fourth

Amendment, courts apply an objective reasonableness standard, considering an

officer's actions 'in light of the facts and circumstances confronting them, without

regard to their underlying intent or motivation.'" *Lunneen v. Village of Berrien*

*Springs, Michigan*, 2023 WL 6162876, at *4 (6th Cir. Sept. 21, 2023) (quoting

*Graham v. Connor*, 490 U.S. at 396-97). As explained in *Palma v. Johns*, 27 F.4th

419, 428 (6th Cir. 2022), when considering the "totality of the circumstances," the

Supreme Court has articulated three factors as a starting point: "(1) 'the severity

of the crime at issue,' (2) 'whether the suspect poses an immediate threat to the

safety of the officers or others,' and (3) 'whether he is actively resisting arrest or

attempting to evade arrest by flight.'" *Id.* (quoting *Estate of Hill v. Miracle*, 853

12

F.3d 306, 313 (6th Cir. 2017) (quoting *Graham*, 490 U.S. at 396).  This list is not,

however, exhaustive.  *Palma*, 27 F.4th at 428-429 (citing *Roell v. Hamilton Cnty.*,

870 F.3d 471, 480 (6th Cir. 2017)); *see also Zuress v. City of Newark, OH*, 815 F.

App'x 1, 6 (6th Cir. 2020) ("The *Graham* factors are not exhaustive.").  The

reasonableness inquiry "is an objective one" that does not account for an officer's

"evil" or "good" intentions and "must be judged from the perspective of a

reasonable officer on the scene, rather than with the 20/20 vision of hindsight."

*Leftwich*, at *2 (quoting *Graham v. Connor*, 490 U.S. at 396-97 (citations

omitted)).  "The calculus of reasonableness must embody allowance for the fact

that police officers are often forced to make split-second judgments—in

circumstances that are tense, uncertain, and rapidly evolving—about the amount

of force that is necessary in a particular situation."  *Graham*, 490 U.S. at 396-97.

Under long-standing case law in this circuit, "there undoubtedly is a clearly

established legal norm precluding the use of violent physical force against a

criminal suspect who already has been subdued and does not present a danger to

himself or others."  *Harris v. City of Circleville*, 583 F.3d 356 (6th Cir. 2009) (citing

*Grawey v. Drury*, 567 F.3d 302 (6th Cir. 2009) ("The general consensus among our

cases is that officers cannot use force ... on a detainee who has been subdued"

and "is not resisting arrest.").  Additionally, as explained in *Hermiz v.*

*Budzynowski*, 2017 WL 2546793, *7 (E.D. Mich. June 13, 2017) (Lawson, J.), the Sixth Circuit has long "held that mere noncompliance is not active resistance." *Woodcock v. City of Bowling Green*, 2017 WL 633385, at *4 (6th Cir. Feb. 16, 2017) (citing *Goodwin v. City of Painesville*, 781 F.3d 314, 323-24 (6th Cir. 2015) (holding that refusal to comply with an officer's command to step outside the apartment was not active resistance); *Eldridge v. City of Warren*, 533 F. App'x 529, 535 (6th Cir. 2013) ("If there is a common thread to be found in our case law on this issue, it is that noncompliance alone does not indicate active resistance; there must be something more.")).  The court of appeals has "long distinguished active resistance by arrestees from passive resistance."  *Jackson v. Washtenaw County*, 678 F. App'x 302, 306 (6th Cir. 2017) (citing *Goodwin v. City of Painesville*, 781 F.3d 314, 323 (6th Cir. 2015)).  "The former can be characterized by physical force, a show of force, or verbal hostility coupled with failure to comply with police orders."  *Jackson*, 678 F. App'x at 306 (citing *Goodwin*, 781 F.3d at 323; *Rudlaff v. Gillispie*, 791 F.3d 638, 641 (6th Cir. 2015)).  "The latter is generally shown by the lack of physical resistance or verbal antagonism."  *Jackson*, 678 F. App'x at 306 (citing *Austin v. Redford Twp. Police Dep't*, 690 F.3d 490, 498 (6th Cir. 2012); *Eldridge*, 533 F. App'x at 535).

2.    *Analysis*

As to the first *Graham* factor – the seriousness of the crime – Ahmed

acknowledges that running a red light and driving with a suspended license are

not particularly dangerous.  Thus, while seriousness of the crime may not be a

factor in this case and weighs in favor of finding excessive force, the court must

still evaluate the other factors.  *See Foos v. City of Delaware*, 2010 WL 3489384, at

*6 (S.D. Ohio Aug. 31, 2010), aff'd, 492 F. App'x 582 (6th Cir. 2012) ("Even

assuming that the seriousness of the crime was not a factor here, this Court must

evaluate the other factors.").

As to the second *Graham* factor -- whether the suspect poses an immediate

threat to the safety of the officers or others – the video evidence shows that

Brown may have become a threat when he began to struggle with Ahmed and

was possibly pushing him toward the busy traffic lane which had not yet been

blocked by other police cars.  (Exhibit 3, 2:16-2:17).  Brown's struggle and possible

resistance on the side of a high-traffic road could have presented an immediate

threat to the officers and other motorists.  *See e.g.*, *Juricich v. Cnty. of San Mateo*,

2021 WL 308607, at *11 (N.D. Cal. Jan. 29, 2021) (While the severity of the crime

might not be significant, where the officers were at the side of a busy road, it was

reasonable to be concerned about the safety of motorists as well as their own

safety and that of suspect.).  However, the court cannot say, as a matter of law, that Brown presented enough of a threat to justify the forced used, as discussed in more detail below in the analysis of the third *Graham* factor.  Instead, this is question for the jury.

As to the third *Graham* factor – whether Brown was actively resisting arrest or attempting to evade arrest by flight – the parties offer different versions of the events but agree that there are two distinct parts of the incident that the court must examine for excessive force.  The first is where Brown is still upright in and next to his vehicle and the second is where he is down on the ground.  As to the first part, Ahmed maintains that his use of force was reasonable because, after exiting the vehicle, Brown swung around to confront Ahmed, grabbed him, and balled his fist.  And only then, Ahmed asserts, did Ahmed grapple with Brown and use strikes to gain his compliance.  In contrast, Brown asserts that he complied with all commands given by the officers and once he opened the door of the vehicle, no further commands were given and yet, Ahmed proceeded to grab Brown's wrist and twist it, using excessive and unnecessary force to pull him from the vehicle.

According to Brown, the initial touching of his wrist and shoulder were excessive force because, without any lawful commands, virtually *any* touching is

excessive force.  It is true that "even minor uses of force are unconstitutionally excessive if they are 'totally gratuitous.'"  *Reed v. Campbell Cty.*, 80 F.4th 734, 749 (6th Cir. 2023) (quoting *Gaddis ex rel. Gaddis v. Redford Township*, 364 F.3d 763, 772 (6th Cir. 2004) (citation omitted)); *see also Chaney-Snell v. Young*, 98 F.4th 699, 719 (6th Cir. 2024).  A review of the video shows that Ahmed placed his hands on Brown's arm or wrist and Brown pulled away; Ahmed then grabbed Brown's shoulder.  (Exhibit 4, 9.31.42-44).  The court cannot find this sequence of touching objectively reasonable based on the video evidence as this went beyond the simple "gentle laying of hands."  *See Chaney-Snell*, 98 F. 4th at 717 (no excessive force where an officer "gently laid hands on" on suspect, meaning they only used the force required to effectuate the arrest.).  After the shoulder grab, the video shows that Brown and Ahmed are actively grappling, but the court cannot tell from the video if the force being used is in response to Brown's active resistance, or if Brown is responding to Ahmed's actions in the absence of any commands.  *Saalim v. Walmart, Inc*., 97 F.4th 995, 1005 (6th Cir. 2024) ("[T]his Court has held that when an officer has not told an individual that he is under arrest, this enhances the likelihood of a finding of excessive force."); *Grawey v. Drury*, 567 F.3d 302, 314 (6th Cir. 2009) ("The general consensus among our cases is that officers cannot use force ... on a detainee who ... is not

17

told he is under arrest, or is not resisting arrest."); *Harris v. City of Circleville*, 583 F.3d 356, 366 (6th Cir. 2009) (denying qualified immunity when, in a nonthreatening situation, officers immediately took a man to the ground prior to issuing any verbal commands).

The present facts are similar to those in *Richards v. Cnty. of Washtenaw*, 818 F. App'x 487, 492 (6th Cir. 2020).  There, the plaintiff said he was neither swinging at the officer nor physically intimidating him; rather he claimed he was only attempting to pull away after the officer had grabbed his arm and refused to let him leave.  *Id.*  The court found a genuine dispute thus remains as to whether the plaintiff was resisting.  *Id*.  Similarly, in *Harris v. City of Circleville*, 583 F.3d at 366, after the plaintiff was arrested and taken into custody, officers attempted to take his jewelry and belt, prompting him to step back and verbally object. Without warning or further instruction, the officers immediately "kicked Harris's leg out from under him and pushed him in the back, causing him to fall and hit his head." *Id*.  The plaintiff was then lifted back onto his feet and was led out to the booking area.  An officer then instructed him to "kneel down" even though he could not physically comply as another officer was forcefully pulling up on his arms which had been handcuffed behind his back.  Again, without further instruction, the officers used a takedown maneuver to take the plaintiff to the

ground.  *Id.*  The court found that the officers were not entitled to qualified immunity on the excessive force claim.

Based on the video evidence, the court cannot find Ahmed's use of force at this juncture and going forward until Brown is on the ground objectively reasonable.  This is so because most of the interaction between Ahmed and Brown while Brown is upright and is then taken to the ground is not visible from Ahmed's shaky body camera, which falls to the ground.  Further, not all of the incident is captured by dash cam video because the other officers block the view. The deposition testimony fills in the potential gaps of the video, but the parties tell different versions of events.  Brown testified that after Ahmed grabbed his wrist, "all hell broke loose."  (ECF No. 26-3, pp. 41).  Brown says he took multiple blows to the face and Ahmed also kneed him in the face before he taken to the ground.  *Id*. at 41-42.  Brown says that after Ahmed punch his face a few times, he tried to curl up in defense, and then Ahmed pulled his hair and kneed him in the face.  *Id*. at 42-43.  During this time, the video does not show that Ahmed was giving Brown any commands and Ahmed said he does not recall giving any other commands after telling Brown to unlock the vehicle door.  (ECF No. 27-3, p. 80). Like in *Richards* and *Harris*, there are genuine issues of fact regarding whether Brown was resisting.  While Ahmed tells a different version of events, as

19

discussed, *supra*, this only means that a jury must sort out whether the force used was excessive and whether Brown was actively resisting.

As set forth above, despite the mandate of *Scott v. Harris*, the court must "nonetheless 'view any relevant gaps or uncertainties left by the videos in the light most favorable to the Plaintiff.'" *LaPlante*, 30 F.4th at 578 (quoting *Latits*, 878 F.3d at 544). *Compare Hermiz v. Budzynowski*, 2017 WL 2546793, *7 (E.D. Mich. June 13, 2017) (Lawson, J.), (partial video of tasing and use of other force, question of fact found), with *Banks v. Twardesky*, 2011 WL 891193, at *5 (E.D. Mich. 2011) (Hluchaniuk, M.J.), report and recommendation adopted, 2011 WL 891181 (E.D. Mich. 2011) (Duggan, J.) (no factual issue found where entire incident captured on the videotape and it was plainly evident that plaintiff was not subdued and had not stopped resisting at the time the pepper spray was administered). Only where claimed "material issues of fact" are plainly contradicted by the video evidence of events in question, may summary judgment be granted in favor of defendants. *See e.g., Griffin v. Hardrick*, 604 F.3d 949, 955-56 (6th Cir. 2010). Here, the video evidence does not reveal the whole story and Brown's version of events could be believed by reasonable jury. Accordingly, the court finds that a genuine issue of material facts precludes summary judgment as

to whether the force used from shoulder grab to the takedown to the ground was excessive in violation of the Fourth Amendment.

As to the second part of the incident, after Brown was taken to the ground, at the hearing, Brown contended that between 1:03 and 1:07 on the video of Gibson's bodycam, where it pans away from Brown (Exhibit 5, 9:32:37-41) is when Ahmed twisted his head, pulled out his hair, and put his knee between Brown's shoulder blades.  Brown also maintained at the hearing that this was consistent with his deposition testimony.  However, Brown's claim that Ahmed twisted his head, pulled out his hair, and put his knee between Brown's shoulder blades during those four seconds is directly contradicted by the dash cam video, which shows Ahmed standing up and moving to the side of the Brown's truck during that precise hour second period.  (Exhibit 3, 9:32-37-41).  Thus, Ahmed is entitled to summary judgment on this aspect of Brown's claim for excessive force because he could not have taken the actions described by Brown during those four seconds.  However, the conclusion that Ahmed's actions during this particular time frame cannot constitute excessive force does not foreclose all argument that excessive force was used while Brown was on the ground.  The video does not plainly show Brown's torso or upper body, or Ahmed's touching of those portions of his body, in the immediate aftermath of his being taken to the ground.  Thus,

during that time frame, there is still a question of fact as to the force used and whether that force was excessive.

The court need not consider the second prong of the qualified immunity test – whether Ahmed's actions were contrary to clearly established law at the time he acted because Ahmed did not set forth any argument on this prong of the qualified immunity test.  The failure to develop this argument constitutes a waiver.  *McCain v. Jenkins*, 2020 WL 5651537, at *6 (S.D. Ohio Sept. 23, 2020) (Where the defendant did not develop its argument on qualified immunity, the court was not required to "put flesh on [the] bones" of that argument.") (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997); *Alston v. City of Detroit Police Officers*, 2024 WL 644566, at *5 (E.D. Mich. Feb. 15, 2024) (Because defendants developed no argument as to whether the rights at issue were clearly established, they waived such arguments.).

But, in any event, the court finds that Ahmed is not entitled to qualified immunity at this stage because of the material questions of fact identified above. As explained in *Saalim v. Walmart*, where a plaintiff is not actively resisting arrest, his right to free from force is clearly established and the defendant is not entitled to qualified immunity.  97 F.4th at 1010.  The Sixth Circuit emphasizes that where

22

a jury could conclude, as here, that the plaintiff was not engaged in active

resistance, qualified immunity is not warranted:

> In other words, in this case, if from the officers'
> perspective Meadows could be seen as possibly engaged
> in active resistance, then qualified immunity would
> presumably be warranted, and this would be true even if
> the officer was not entirely sure. But if the jury could
> reasonably conclude that from the officers' perspective
> Meadows could not be seen as possibly engaged in
> active resistance, then qualified immunity would not be
> warranted.

*Meadows v. City of Walker*, 46 F.4th 416, 424 (6th Cir. 2022).  Accordingly, Ahmed

is not entitled to qualified immunity on Brown's Fourth Amendment claim, except

as to where court found that Ahmed could not have acted as Brown claimed while

he was on the ground.

    C.   <u>Assault and Battery</u>

    "Under Michigan law an assault is 'an attempt to commit a battery or an

unlawful act which places another in reasonable apprehension of receiving an

immediate battery.'"  *Grawey v. Drury*, 567 F.3d 302, 315 (6th Cir. 2009) (citing

*People v. Nickens*, 470 Mich. 622, 628 (Mich. 2004)).  "A battery is 'an

unintentional, unconsented and harmful or offensive touching of the person of

another, or of something closely connected with the person.'"  *Id*. (quoting

*Nickens*, 470 Mich. At 628).  An officer does not commit an assault or battery

when using reasonable force to effectuate an arrest, although the officer may be liable for assault and battery if unjustifiable force is used.  *Bennett v. Krakowski*, 671 F.3d 553, 560-61 (6th Cir. 2011) (citations omitted); *VanVorous v. Burmeister*, 262 Mich. App. 467, 480 (2004) (quoting *Brewer v. Perrin*, 132 Mich. App. 520, 528 (1984)) ("It is well-settled in our state's jurisprudence that 'a police officer may use reasonable force when making an arrest.'").

"Michigan state law imposes a subjective test for governmental immunity for intentional torts, based on the officials' state of mind, in contrast to the objective test for federal qualified immunity.  Michigan governmental immunity 'protects a defendant's honest belief and good-faith conduct with the cloak of immunity while exposing to liability a defendant who acts with malicious intent.'" *Brown v. Lewis*, 779 F.3d 401, 420 (6th Cir. 2015) (quoting *Odom v. Wayne Cnty.*, 482 Mich. 459 (2008)) (finding that district court improperly applied an objective reasonableness test in analyzing plaintiff's assault and battery claim).  "That malicious intent is defined as 'conduct or a failure to act that was intended to harm the plaintiff...[or] that shows such indifference to whether harm will result as to be equal to a willingness that harm will result.'" *Id*. (quoting *Odom*, 482 Mich. at 475).  In order for Ahmed to be entitled to governmental immunity for an intentional tort, he must establish that he was "acting in the course of his

employment and at least reasonably believed he was acting within the scope of his authority, that his actions were discretionary in nature, and that he acted in good faith." *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254 (6th Cir. 2010) (citing *Odom v. Wayne Cnty.*, 482 Mich. 459 (2008), which defined good faith as "without malice."); *see also Malory v. Whiting*, 489 F. App'x 78, 86 (6th Cir. 2012) ("The question of an officer's good faith under Michigan law overlaps considerably, if not entirely, with [the] analysis of whether the officer's actions were objectively reasonable under the circumstances.").

As explained in detail above, there is a question of fact regarding whether the force used by Ahmed was objectively reasonable, except as to the four second period described above where Ahmed could not have taken the actions Brown claimed. Thus, summary judgment on Brown's assault and battery claims is also denied to this same extent.[2] *Rost v. Heaney*, 2020 WL 6146852, at *9 (E.D. Mich. Oct. 20, 2020); *see Acklin v. City of Inkster*, 93 F. Supp. 3d 778, 799 (E.D. Mich.

---

[2] For that four second period while Brown was the on the ground, the court concluded that Ahmed could not have used excessive force because this claim was contradicted by the video evidence. Thus, Brown's assault and battery claim, to the extent it arises from this time period is similarly precluded. *See Estate of Hill v. Miracle*, 853 F.3d 306, 318 (6th Cir. 2017) (concluding that the defendant is entitled to governmental immunity on the plaintiff's state-law claim of assault and battery because the record reflected that the defendant "acted in an objectively reasonable manner with the minimum force necessary to bring [the plaintiff] under control"); *Estate of Sowards v. City of Trenton*, 125 F. App'x 31, 43 (6th Cir. 2005) (concluding that, because "the officers' use of force ... was reasonable and justified ... the assault and battery claim cannot stand")).

2015) (finding that where officer's conduct was objectively unreasonable, the plaintiff could proceed with his assault and battery claims); *Bennett v. Krakowski*, 2010 WL 11545745, at *5 (E.D. Mich. Oct. 22, 2010), aff'd in part, appeal dismissed in part, 671 F.3d 553 (6th Cir. 2011) (Where there was a question of fact regarding whether the officers violated the plaintiff's constitutional rights and used excessive force, there was likewise a question of fact regarding the issue of assault and battery.).

## IV.    CONCLUSION

For the reasons set forth above, the court **DENIES** Defendant's motion for summary judgment in part and **GRANTS** it in part.

**SO ORDERED**.

Date: September 30, 2024                     s/F. Kay Behm
                                             F. Kay Behm
                                             United States District Judge